IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES,

Plaintiff,

v.

ALLAN LEHMANN; JAN LEHMANN; OREGON DEPARTMENT OF REVENUE; OREGON DEPARTMENT OF JUSTICE; WASHINGTON COUNTY TAX COLLECTOR; VELOCITY INVESTMENTS, INC.; ALLAN LEHMANN AND JAN LEHMANN JOINT REVOCABLE LIVING TRUST;

Defendants.

No. 3:14-cv-01894-HZ

OPINION & ORDER

Yen J. Tran
United States Department of Justice
Tax Division, P.O. Box 683
Washington, DC 20044

Attorney for Plaintiff

Allan Lehmann
Jan Lehmann
Allan Lehmann and Jan Lehmann Joint Revocable Living Trust
P.O. Box 1602
Beaverton, OR 97075

Pro Se Defendants

Bradley E. Anderson
Washington County Counsel
155 N. First Avenue, Suite 340, MS 24
Hillsboro, OR 97124

Attorney for Defendant Washington County Tax Collector

HERNÁNDEZ, District Judge:

The United States brings this action to reduce to judgment its tax assessments against Defendant Allan Lehmann and foreclose its tax liens against real property owned by Mr. Lehmann located at 7150 SW Hoodview Place in Washington County, Oregon ("Hoodview Property")[1]. The United States seeks summary judgment against Mr. Lehmann for his tax liabilities for 1997 through 2006, 2008 and 2009. The United States also asks the Court to find that the transfer of the Hoodview Property from Mr. Lehmann to the Allan Lehmann and Jan Lehmann Joint Revocable Living Trust ("Trust") is voided, that the IRS' liens attach to the Hoodview Property, and that the United States may enforce and foreclose its liens.

In addition, the United States seeks summary judgment against Defendant Jan Lehmann because her only interest in the Hoodview Property is as a trustee of Mr. Lehmann's nominee, the Trust. Finally, the United States asks the Court to enter judgment against Defendant Velocity Investments because it does not have any interest in the Hoodview Property.

[1] The legal description of this property is: Lot 5, ORCHARD HEIGHTS, in the City of Beaverton , County of Washington and State of Oregon. Maragani Decl. Ex. E, ECF 40-5.

Defendants did not respond to the United States' motion for summary judgment. The Court grants the motion.

## BACKGROUND

### I. Mr. Lehmann's Tax Returns

Mr. Lehmann did not file a tax return from 1997 through 2003, 2006, 2008, or 2009. Maragani Decl. Ex. TT ("A. Lehmann Depo.") 53:20-25, ECF 40-31 (confirming that he has not filed any returns for the years involved in this lawsuit except for 2004 and 2005). For the entire time at issue in this action, since 1997, Mr. Lehmann has worked for Allied Van Lines as an independent contractor. Id. at 15:13-25. As an independent contractor, Mr. Lehmann is responsible for paying all of his own employment and income taxes. Id. at 16:11-25.

The Court lists below each of the Notices of Deficiency issued to Mr. Lehmann by the IRS and the dates upon which they were issued:

| Tax Year | Date Notice of Deficiency Issued |
|---|---|
| 1997 | May 16, 2003 |
| 1998 | May 16, 2003 |
| 1999 | May 16, 2003 |
| 2000 | May 16, 2003 |
| 2001 | December 6, 2004 |
| 2002 | April 13, 2006 |
| 2003 | June 12, 2006 |
| 2006 | November 19, 2012 |
| 2008 | November 19, 2012 |
| 2009 | November 19, 2012 |

Maragani Decl. Exs. KK, LL, MM, NN, OO, PP, QQ, RR, SS; Armstrong Decl. Ex. CC, ECF 41-4. Mr. Lehmann did not challenge any of these Notices of Deficiency in Tax Court. Lehmann Depo. 72:21-23, 75:10-12, 60:23-61:1, 78:3-5, 80:15-17.

On November 25, 2014, the United States filed this lawsuit. Compl., ECF 1. During the pendency of the lawsuit, Mr. Lehmann submitted tax returns to the United States for each of the years at issue. Maragani Decl. Exs. K-T. The United States requests that the Court reduce to judgment the income tax liabilities Mr. Lehmann admitted to owing in the returns he provided to the United States for 1997 through 2003, 2006, 2008, and 2009, plus interest and penalties.

## II. Mr. Lehmann's Property

On May 7, 2003, Mr. Lehmann's father, Richard Lehmann, purchased the Hoodview Property. Maragani Decl. Ex. E. Richard Lehmann transferred the Hoodview Property to the Richard E. Lehmann Trust. Maragani Decl. Ex. F. Mr. Lehmann testified that his father placed the property in a trust so that his children, Mr. Lehmann and Nancy Lehmann, would not have to pay any inheritance tax. A. Lehmann Depo. 36: 4-8.

Richard Lehmann died in June of 2006. Id. at 41:10-21. On June 21, 2006, Mr. Lehmann and Nancy Lehmann, as co-trustees of the Richard E. Lehmann Trust, transferred the Hoodview Property to Mr. Lehmann. Maragani Decl. Ex. G. The same day, Mr. Lehmann and his wife, Defendant Jan Lehmann, created the Allan Lehmann and Jan Lehmann Joint Revocable Living Trust ("Trust"). Maragani Decl. Ex. I. Mr. Lehmann testified that he transferred the Hoodview Property and multiple automobiles into the Trust. A. Lehmann Depo. 49:4-12.

The Trust only has two trustees—Mr. and Mrs. Lehmann. Maragani Decl. Ex. I. Mrs. Lehmann testified that Mr. Lehmann "wanted a trust for his kids . . . [p]robably just because he

didn't want them to pay taxes." J. Lehmann Depo. 26:18-20. The Trust did not pay any money for the Hoodview Property or the automobiles. Maragani Decl. Ex. H. Mr. Lehmann also testified that the Trust does not have income and has never made any distributions. A. Lehmann Depo. 49:2-3, 52:2-6. Mr. Lehmann failed to record the conveyance of a motorcycle to the Trust and, when he sold the motorcycle, he did not notify the Trust. Id. at 49:21-50:11.

Mr. and Mrs. Lehmann began living in the Hoodview Property in 2006. Id. at 6: 20. They do not pay rent to the Trust. Maragani Decl. Ex. UU ("J. Lehmann Depo") 28:22-19. They pay the utility bills for the house and the property taxes. A. Lehmann Depo. 44:9-17. They handle all of the maintenance on the house. Id. at 44:21-25.

**III. Notice of Federal Tax Liens**

On October 17, 2011, the IRS filed a Notice of Federal Tax Lien in Washington County, Oregon, that listed Mr. Lehmann's federal income tax liabilities for 1997 through 2005. Maragani Decl. Ex. A. The Notice indicates that the IRS needed to refile a Notice of Federal Tax Lien for 1997 through 2000 by October 29, 2013. Id.

On May 2, 2013, the IRS filed a Notice of Federal Tax Lien in Washington County, Oregon that listed Mr. Lehmann's federal income tax liabilities for 2006, 2008, and 2009. Maragani Decl. Ex. B.

On November 20, 2013, the IRS filed a Revocation of Certificate of Release of Federal Tax Lien indicating that "[t]he automatic release of federal tax lien is revoked only as it relates to the tax liabilities [of Allan Lehmann] listed in this revocation [1997, 1998, 1999, 2000]." Maragani Decl. Ex. C. The IRS filed this Revocation because a "Notice of Federal Tax Lien" was not refiled timely. Id.

On April 22, 2014, the IRS filed a Notice of Federal Tax Lien in Washington County, Oregon that listed Mr. Lehmann's federal income tax liabilities for 1997 through 2000. Maragani Decl. Ex. D.

**IV. VeloCity Investments**

The United States named VeloCity Investments, LLC, as a defendant "because it may claim an interest in the Subject Property." Compl. ¶ 9. VeloCity has a judgment against Mrs. Lehmann for $5,430. A. Lehmann Depo. 29:24-30:11. However, Mr. and Mrs. Lehmann deny knowing anything about VeloCity Investments or the judgment. Id.; J. Lehmann Depo. 15:13-16:3. On June 26, 2015, the Clerk of the Court in this case entered default against VeloCity Investments because it was properly served but failed to file a response to the United States' Complaint. Clerk's Entry of Default, ECF 20.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**DISCUSSION**

The United States may reduce its tax assessment to judgment by filing suit under 26 U.S.C. §§ 7401 & 7402. In this action to collect taxes, the United States has the initial burden of proof. Palmer v. I.R.S., 116 F.3d 1309, 1312 (9th Cir. 1997). In meeting that burden, the "Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." Id. "The presumption shifts the burden of proof to the taxpayers to show that the determination is incorrect." Id. However, where the Government offers a "naked assertion" of unreported income without factual foundation, "an assessment may not be supported even where the taxpayer is silent." Weimerskirch v. CIR, 596 F.2d 358, 360–61 (9th Cir. 1979).

The United States submits Certificates of Assessments and Payments (Form 4340s) as proof that assessments were made. A Form 4340 is "probative evidence in and of itself and, 'in the absence of contrary evidence, is sufficient to establish that notices and assessments were properly made.'" Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (quoting Hughes v.

United States, 953 F.2d 531, 535 (9th Cir. 1992)) ("Official certificates, such as Form 4340, can constitute proof of the fact that the assessments actually were made.").

The Form 4340s establish that the tax liabilities were properly assessed against Mr. Lehmann by a duly authorized delegate of the Secretary of Treasury, 26 U.S.C. §§ 6201-6203, and that the notices and demand for payment of the liabilities were properly sent. Id.; 26 U.S.C. §§ 6303(a), 6321. Furthermore, Mr. Lehmann has admitted he owes the amount of income tax assessed by the United States. Thus, the United States establishes its *prima facie* case through its presentation of the Form 4340s and minimal evidentiary foundation. See Hardy v. C.I.R., 181 F.3d 1002, 1005 (9th Cir. 1999); United States v. Jones, 33 F.3d 1137, 1139 (9th Cir. 1994).

**I. Mr. Lehmann's tax liability**

Mr. Lehmann's tax liability for 2004 and 2005 is based on tax returns he filed with the IRS and admissions he made about the returns' accuracy. Maragani Decl. Exs. U, W; A. Lehmann Depo. 85:12. Thus, Mr. Lehmann is liable for $12,171 in tax for 2004 and $16,332 for 2005. Id.

Mr. Lehmann's tax liability for 1997 through 2003, 2006, 2008, and 2009, is based on returns submitted by Mr. Lehmann once this litigation began. Armstrong Decl. Exs. Y-JJ; see, e.g., United States v. Molen, No. 2:10-CV-2591 MCE KJN, 2014 WL 2118225, at *7 (E.D. Cal. May 21, 2014) ("[D]efendants' signed tax returns are not hearsay because they are statements made by defendants being offered as evidence against defendants.") (citing Fed. R. Evid. 801(d)(2)) report and recommendation adopted, No. 2:10-CV-2591-MCE-KJN, 2014 WL 2892542 (E.D. Cal. June 25, 2014). Thus, Mr. Lehmann is liable for the following amounts of tax for each year: $28,500 for 1997; $23,780 for 1998; $24,925 for 1999; $6,385 for 2000;

$21,156 for 2001; $24,121 for 2002; $11,941 for 2003; $8,513 for 2006; $11,123 for 2008; and $10,471 for 2009. Gutierrez Decl. ¶ 4, ECF 42.

Mr. Lehmann is also liable for interest and penalties accruing on his tax liabilities. Mandatory interest accrues on federal income tax liabilities beginning on the date the return is due and until the liability is paid in full. See 26 U.S.C. § 6601(a)(b)(e), § 6072, § 6621(b), § 6622. Furthermore, the United States submits sufficient evidence to meet its burden of production to show that Mr. Lehmann is subject to penalties for failing to make estimated tax payments and failing to pay the tax on time. See Maragani Decl. Exs. K-U, W[2] (showing that Mr. Lehmann did not pay any money towards his tax liabilities for the years at issue in this case). Therefore, the IRS properly imposed the following penalties: $1,535.29 for 1997; $1,079.33 for 1998; $1,197.07 for 1999; $343.40 for 2000; $833.49 for 2001; $796.05 for 2002; $308.43 for 2003; $348.78 for 2004; $655.11 for 2005; $404.31 for 2006; $357.46 for 2008; and $250.68 for 2009. Gutierrez Decl. ¶ 4.

The Government has also submitted evidence that shows that Mr. Lehmann is subject to additional penalties for failing to file his tax returns on time. See 26 U.S.C. § 6651; Gutierrez Decl. ¶ 4. Thus, the IRS properly imposed the following penalties: $7,125 for 1997; $5,350 for 1998; $5,608.13 for 1999; $1,436.63 for 2000; $4,692.60 for 2001; $5,359.73 for 2002; $2,689.43 for 2003; $1,915.43 for 2006; $2,502.68 for 2008; and $2,355.98 for 2009. Id.

In sum, the United States has submitted sufficient evidence showing that Mr. Lehmann is personally liable for $579,773.32 in federal income tax and interest as of May 7, 2016, with interest continuing to accrue on that amount.

[2] Counsel for the United States represented to the Court in an email that Exhibits J, V, and X were omitted exhibits.

**II. Transfer of the Hoodview Property to the Trust**

The United States alleges that the Trust is Mr. Lehmann's nominee with respect to the Hoodview Property. The Court agrees.

State law controls the determination of whether an entity is an alter ego or nominee. The Colby B. Found. v. United States, No. CIV. 96-3073-CO, 1997 WL 1046002, at *20 (D. Or. Oct. 22, 1997), aff'd sub nom. Colby B. Found. v. United States, 166 F.3d 1217 (9th Cir. 1999) (citing Morgan Overseas Bank, Ltd. v. United States, No. CIV. 84-797-PA, 1986 WL 10102, at *10 (D. Or. June 17, 1986)). Although Oregon law recognizes the nominee theory, it does not address the factors necessary to determine whether an entity is the nominee of the taxpayer. Id. Thus, as in Colby B., the Court looks to the nominee factors identified in Towe Antique Ford v. IRS, 791 F. Supp. 1450, 1454 (D. Mon. 1992), aff'd, 999 F.2d 1387 (9th Cir. 1993) (affirming on alter ego issue, but declining to reach nominee issue). Colby B., 1997 WL 1046002, at *20; see also 911 Mgmt., LLC v. United States, 657 F. Supp. 2d 1186, 1193–94 (D. Or. 2009); United States v. Secapure, No. C 07–1050 THE, 2008 WL 820719, at *7 (N.D. Cal. Mar. 26, 2008) (noting that courts throughout the Ninth Circuit rely on the Towe factors to determine nominee status). The Towe factors are:

1) Whether the nominee paid no or inadequate consideration;

2) Whether the property was placed in the name of the nominee in anticipation of litigation or liabilities;

3) Whether there is a close relationship between the transferor and the nominee;

4) Whether the parties to the transfer failed to record the conveyance;

5) Whether the transferor retained possession; and

6) Whether the transferor continues to enjoy the benefits of the transferred property.

Towe, 791 F.Supp. at 1454. The Colby B. court added four additional factors relevant to the nominee analysis, although they were not articulated in Towe:

(1) the source of the funds used to purchase the property;

(2) the taxpayer's continued use of the property without payment of fair rental value;

(3) the taxpayer's continued payment of maintenance charges and real estate taxes; and

(4) the taxpayer's acts of holding himself out as the owner of the property.

Colby B., 1997 WL 1046002, at *20.

Generally, a business holds an asset as a nominee for a taxpayer when the taxpayer maintains a beneficial interest and exerts control over the asset. See, e.g., LiButti v. United States, 107 F.3d 110, 119 (2d Cir.1997). The Court should consider the totality of the circumstances rather than single out the presence or absence of one particular factor. See Turk v. IRS, 127 F.Supp.2d 1165, 1167 (D. Mont. 2000) ("No factor can dispose of the issue itself, and no factor is necessarily required in order to find nominee status.").

Here, the first factor is met because the Trust paid no consideration for the Hoodview Property. As to the second factor, the Court can infer that the Trust was set up to avoid tax liabilities, based on Mr. Lehmann's testimony that he set up the Trust because his father had made a similar choice to avoid inheritance taxes and Mrs. Lehmann's testimony that she believed Mr. Lehmann set up the Trust so that his children would avoid taxes. The third factor is met because Mr. Lehmann has a close relationship with the trustees of the trust—himself and his wife. As to the fourth factor, Mr. Lehmann testified that he failed to record his conveyance of a motorcycle to the Trust and, ultimately, he sold the motorcycle without informing the Trust. The fifth factor is met because Mr. and Ms. Lehmann retained possession of the Hoodview Property

by continuing to live there without paying the Trust, while performing maintenance on the property and paying property taxes. For the same reasons, the sixth factor is met.

Further, an examination of the facts supporting the Towe factors shows that the four additional factors from Colby B. are met as well. In sum, based on the entire preceding discussion of the ten factors, the evidence in the record is such that, even construing the evidence and the inferences therefrom in a light most favorable to Defendants, all reasonable jurors would conclude that the Trust is not an entity separate from Mr. Lehmann and thus, that the Trust is the nominee of Mr. Lehmann.

Alternatively, the transfer of the Hoodview Property to the Trust was fraudulent with respect to the United States. Oregon Revised Statute § (O.R.S.) 95.230 provides that:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditors claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > **(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or**
> >
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtors ability to pay as they become due.
>
> **(2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:**
>
> > **(a) The transfer or obligation was to an insider;**
> >
> > **(b) The debtor had retained possession or control of the property transferred after the transfer;**

> (c) The transfer or obligation was disclosed or concealed;
>
> (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
>
> (e) The transfer was of substantially all the debtors assets;
>
> (f) The debtor had absconded;
>
> (g) The debtor had removed or concealed assets;
>
> **(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;**
>
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> **(j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and**
>
> (k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

(emphasis added).

The United States argues that the transfer of the Hoodview Property to the Trust was fraudulent because it was made with the intent to defraud a creditor, the IRS. The Court agrees. Mr. Lehmann retained possession of the Hoodview Property after the transfer and the transfer was to an insider, himself and his wife. O.R.S. 95.230(2)(a)(b). In addition, the Trust did not pay reasonably equivalent value for the Property. O.R.S. 95.230(2)(h). Finally, Mr. Lehmann knew that he had outstanding tax liabilities when he transferred the property because he had not paid taxes since 1997 and had received Notices of Deficiency for multiple years. Thus, the transfer occurred "shortly after a substantial debt was incurred." O.R.S. 95.230(2)(j).

In sum, the transfer of the Hoodview Property to the Trust was fraudulent as to the United States. Considering Mr. Lehmann's substantial tax liabilities and the equities of this case,

the United States may avoid the transfer, and the United States' federal income tax liens attach to the Hoodview Property. The Court grants the United States' motion for summary judgment and holds that the United States is entitled to foreclose upon and sell the Hoodview Property for the purpose of satisfying those liens. See U.S.C. § 7403(c).

**III. Jan Lehmann**

Mrs. Lehmann's only interest in the Hoodview Property is as a trustee of the Trust. Because the Court determines that the Trust is a nominee and sets aside the transfer of the Hoodview Property to it, Mrs. Lehmann has no remaining interest in the property. Thus, the Court grants the United States' motion for summary judgment against Mrs. Lehmann.

**IV. VeloCity Investments**

VeloCity Investments has no legitimate interest in the Hoodview Property. VeloCity failed to file a response to the United States' Complaint. Further, while VeloCity has an outstanding judgment against Mrs. Lehmann, she has no interest in the Hoodview Property except as a trustee of the nominee set up by Mr. Lehmann. Therefore, the Court enters summary judgment against VeloCity.

**CONCLUSION**

Defendant's motion for summary judgment [39] is granted.

IT IS SO ORDERED.

DATED this 21 day of Nov, 2016.

Marco Hernández

MARCO A. HERNÁNDEZ
United States District Judge